**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ANTHONY R. DAVILA,

      Petitioner,

v.                                            Cr. No. 15-1515 RB/KK
                                            (Civ. No. 18-68 RB/KK)

UNITED STATES OF AMERICA,

      Respondent.

**MAGISTRATE JUDGE'S**
**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 420), and Memorandum in Support (Doc. 421), both filed on January 22, 2018. Respondent the United States of America ("the Government") responded in opposition to the motion on May 18, 2018 (Doc. 441), and Defendant filed a reply in support of it on June 28, 2018. (Doc. 460.) United States District Judge Robert C. Brack referred this matter to me for proposed findings and a recommended disposition on January 23, 2018. (Doc. 423.)

I have meticulously reviewed the pleadings and attachments in this civil proceeding and the record in the underlying criminal case. Because the motion, exhibits, and record conclusively establish that Mr. Davila is not entitled to relief, an evidentiary hearing is unnecessary. 28 U.S.C. § 2255(b); *United States v. Flood*, 713 F.3d 1281, 1291 (10th Cir. 2013); *United States v. Kennedy*, 225 F.3d 1187, 1193 (10th Cir. 2000). Having carefully considered the parties' submissions, the civil and criminal record, and the relevant law, I recommend that Mr. Davila's Motion be **DENIED**.

# I. Factual Background and Procedural History

This case grew out of a United States Drug Enforcement Administration ("DEA") wiretap investigation into a methamphetamine drug trafficking operation in Silver City, New Mexico. (Doc. 295 at 5.) Mr. Davila, one of 13 co-conspirators, was identified as a street-level distributor and money courier for the operation. (*Id.*) Monitored calls revealed that Mr. Davila was present in January 2015 for the pickup of .45 grams of methamphetamine and the collection and delivery of money for the purchase of 1.3 grams of methamphetamine. (*Id.* at 5-6.) Also, in several monitored calls, Mr. Davila was captured discussing his involvement in and plans for the distribution of high-grade marijuana. (*Id.*)

On April 28, 2015, the Government charged Mr. Davila and several co-defendants in a 34-count indictment with conspiracy to distribute methamphetamine and various crimes related to that conspiracy. (Doc. 2.) Specifically, in Count 1, Mr. Davila was charged with conspiracy to distribute methamphetamine, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(C), from on or about March 27, 2014 through about April 28, 2018; and, in Counts 20 and 23, he was charged with using a telephone on or about January 12, 2015 and January 16, 2015, to further the commission of a drug-trafficking crime, *i.e.*, conspiracy to possess with intent to distribute a controlled substance, contrary to 21 U.S.C. § 846, in violation of 21 U.S.C § 843(b) and 18 U.S.C. § 2. (*Id.* at 1-2, 14-15.)

Mr. Davila was arrested on these charges at his home on April 30, 2015, at which time law enforcement officers executing a search warrant found 233.5 net grams of marijuana, seven firearms, over $16,000 in cash, a scale, and a money counter. (Doc. 295 at 6; Doc. 312-1.) The marijuana discovered in Mr. Davila's residence, combined with the amount of marijuana for which

he was "accountable" by virtue of the DEA's investigation into his and his co-defendants' activities, amounted to 3,622.04 kilograms. (Doc. 295 at 6.)

The Court appointed attorney Margaret Strickland to represent Mr. Davila. (Doc. 39.) Following a detention hearing, the Court released Mr. Davila pursuant to an Order Setting Conditions of Release. (Docs. 93, 97.) However, the Court subsequently revoked his conditions of release and remanded him back into custody for driving under the influence of alcohol, causing an accident, and fleeing from law enforcement, resulting in state law charges of aggravated fleeing a law enforcement officer, homicide or great bodily injury by vehicle, and aggravated driving while under the influence of intoxicating liquor and/or drugs. (Docs. 171, 185, 193, 194.)

On August 17, 2016, pursuant to a plea agreement, Mr. Davila pled guilty to Count 1 of the indictment, specifically admitting the following facts:

> From on or about March 27, 2014, and continuing to on or about April 28, 2015, I worked with my co-defendants and others to distribute methamphetamine in Silver City, New Mexico. I am responsible for the distribution of approximately 500 grams to 1.5 kilograms of methamphetamine. In furtherance of our drug trafficking activities, I did the following:
>
> - January 12, 2015, I delivered methamphetamine payments from two of my co-defendants to another co-defendant at the direction of another co-defendant.
>
> - On January 16, 2015, at the direction of a co-defendant, I delivered $3000 to a methamphetamine source of supply and then delivered methamphetamine to another co-defendant.

(Doc. 269 at 2, 4.)

In the plea agreement, Mr. Davila acknowledged his understanding that the maximum penalty that the Court could impose for Count 1 was a period of 20 years' imprisonment, a fine not to exceed $1,000,000, a mandatory term of supervised release of at least three years, and a mandatory special penalty assessment of $100. (*Id.* at 2.) The plea agreement also stated that, if

he "truthfully provid[ed] to the Government, before sentencing, all information and evidence concerning the offenses that were part of the same course of conduct underlying th[e] agreement[,]" Mr. Davila might be eligible for "the 'safety valve' provisions set forth at 18 U.S.C. § 3553(f)(1)-5 and U.S.S.G § 5C1.2," which would entitle him to a reduction of two levels from the base offense level calculated under the sentencing guidelines. (*Id.* at 2-3, 5-6.) Further, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the Government stipulated to a reduction of up to three levels from the base offense level under the sentencing guidelines for acceptance of responsibility, contingent upon Mr. Davila's "appropriate oral or written statement to the United States probation officer" preparing the presentence report, and to a reduction of two levels because Mr. Davila was "a minor participant in the criminal activity underlying [the plea] agreement." (*Id.* at 3, 5.)

The United States Probation Office issued a Presentence Investigation Report ("PSR") on October 25, 2016 and a revised PSR on December 2, 2016.[1] (Docs. 286, 295.) Both the original and revised PSRs reflected that Mr. Davila was in a criminal history category of I and that his base offense level was 30, with the original PSR attributing 1.75 kilograms of methamphetamine to him and the revised PSR reflecting responsibility for "no less than 1.8 kilograms of mixtures and substances containing methamphetamine."[2] (Doc. 286, ¶¶ 5, 13; Doc. 295, ¶¶ 9, 16.) Despite the fact that Mr. Davila had not debriefed at the time of issuance, the original PSR assumed without any analysis that Mr. Davila was safety-valve eligible, presumably in anticipation of his meeting

---

[1] As a matter of practice, PSRs are not filed on the public record in this district; however, I have reviewed Mr. Davila's original and revised PSRs, and the Government and Mr. Davila have access to them as parties to Mr. Davila's criminal case.

[2] Based on the methamphetamine attributed to him, Mr. Davila's base offense level as specified in the Drug Quantity Table was 32; and, because Defendant received a role adjustment, his base offense level was properly reduced to 30 pursuant to U.S.S.G. § 2D1.1(a)(5). (Doc. 295 at 7.)

all criteria for eligibility prior to sentencing, and thus afforded him a two-level reduction from his base offense level in accordance with U.S.S.G. § 2D1.1(b).[3] (Doc. 286 at 6-7.)

The revised PSR, in contrast, did not award a safety-valve reduction and instead provided for a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm in connection with the offense, based on the discovery of seven firearms in Mr. Davila's residence at the time of his arrest. (*Compare* Doc. 295 at 6-8 *with* Doc. 286 at 6-7.) Also, although this did not change his base offense level, the revised PSR reflected as relevant conduct that Mr. Davila was involved in trafficking marijuana, including a January 2015 agreement to purchase four pounds for $8,100, and possession of 233.5 net grams found in his residence at the time of his arrest. (Doc. 295, ¶¶ 9, 10.) Thus, accounting for the negotiated minor role and acceptance of responsibility adjustments, the initial PSR reflected a total adjusted offense level of 23 and a guideline imprisonment range of 46-57 months, (Doc. 286 at 7), while the revised PSR reflected a total adjusted offense level of 27 and an imprisonment range of 70-87 months. (Doc. 295 at 8.)

Ms. Strickland filed a Sentencing Memorandum in November 2016. (Doc. 292.) In it, she argued that Mr. Davila should receive a four-level reduction based on his "minimal role" in the conspiracy, stating:

> Mr. Davila's [PSR] gives a two[-]level role adjustment for minor participant. In fact, Mr. Davila's only role in this case was making deliveries on two occasions for his brother [co-defendant Daniel Lee] Jacquez. Unfortunately for Mr. Davila, the money delivered on one of those occasions was for more than a kilogram of methamphetamine, which gives Mr. Davila an extremely high offense level. The [PSR] indicated Mr. Davila acted solely on the request of his brother Daniel Jacquez. He did not direct the actions of any other member of the organization and

---

[3] The "safety-valve" reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 is applicable where, among other things, the defendant "did not . . . possess a firearm . . . in connection with the offense" and "has truthfully provided to the Government all information and evidence [he] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan[.]" *See* U.S.S.G. § 5C1.2(a)(2), (5). At sentencing, Mr. Davila was ineligible for the safety-valve reduction based not only on his possession of guns in connection with the offense, but also on his conceded failure to debrief and provide the Government with all information and evidence he had regarding the offense, his co-conspirators, and his relevant conduct. (Doc. 312 at 4; *see also* Doc. 460 at 2-3.)

had no control of the drug conspiracy. Merely delivering money on two occasions makes him plainly the least culpable amongst his codefendants who have actually distributed the large amounts of methamphetamines and a minimal participant eligible for a further two[-]level reduction.

(*Id.* at 3.) She also argued that Mr. Davila should receive a further two-level reduction because his at-issue conduct was motivated solely by his familial relationship with his brother, and because he had no control over the drug enterprise and no knowledge of its scope and structure. (*Id.* at 3-4.) Had these reductions been adopted by the sentencing judge, Mr. Davila's offense level would have been 19, with a corresponding sentencing range of 30-37 months. (*Id.* at 4.) Ms. Strickland further argued that a variance resulting in a 24-month term of imprisonment was appropriate under the relevant sentencing considerations in 18 U.S.C. § 3553 and U.S.S.G. §§ 5K2.20 and 5H1.4. (*Id.*) Ms. Strickland reiterated these arguments at Mr. Davila's sentencing hearing. (Doc. 435 at 6-7, 9.)

In addition, Ms. Strickland filed an Objection to Amended PSR in December 2016. (Doc. 310.) In the objection, she argued that the two-level enhancement for possessing a weapon was inappropriate in Mr. Davila's case because: (a) under the sentencing guidelines, the enhancement under U.S.S.G. § 2D1.1 applies only when a "weapon was present" and there was no evidence that a weapon was present when Mr. Davila was involved in transporting money or drugs; and, (b) the guns were found on April 30, 2015, two days outside the time frame relevant to his plea agreement and three months after the charged conspiracy. (*Id.*) Ms. Strickland raised this objection again in open court during Mr. Davila's sentencing hearing, where she argued that the firearm enhancement should not apply because the guns were discovered "months after" the conduct to which Mr. Davila was pleading guilty, and no methamphetamine was discovered in Mr. Davila's home. (Doc. 435 at 6-7.)

The sentencing judge rejected Ms. Strickland's arguments regarding the firearm enhancement and the additional guidelines departures for which she advocated on Mr. Davila's behalf. (*Id.* at 13.) Instead, consistent with the revised PSR, the Court found that Mr. Davila's guideline offense level was 27, which corresponds with a term of imprisonment of 70-87 months. (*Id.* at 13.) However, in light of certain mitigating factors,[4] the Court varied downward, imposing a 60-month term of imprisonment. (*Id.* at 15-16.) Pursuant to the plea agreement, following sentencing the Government stipulated to dismissal of the remaining counts against Mr. Davila. (Doc. 269 at 7; Doc. 326 at 1.)

Mr. Davila did not file a direct appeal to challenge his sentence. (Doc. 420 at 4.) Instead, he filed the present Section 2255 motion, arguing that Ms. Strickland was ineffective during the plea bargaining and sentencing phases of his case. (Docs. 420, 421.) In support of his motion, Mr. Davila argues that: (1) Ms. Strickland failed to adequately advise him during the plea-bargaining phase of the case, (Doc. 420 at 4); (2) Ms. Strickland failed to object to the firearm enhancement in the amended PSR or to argue that he was eligible for a safety-valve reduction, (*id.*; Doc. 421 at 5-6); and, (3) there is an unjustifiable disparity between his sentence and that of a similarly situated co-defendant, Gilbert Moreno. (Doc. 420 at 4; Doc. 421 at 6.) On these bases, Mr. Davila argues that the Court should vacate his sentence and resentence him to a range of 27-33 months' imprisonment. (Doc. 421 at 7.)

## II.    Standard of Review

Pursuant to 28 U.S.C. § 2255, a federal prisoner who

claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

---

[4] The Court found that Mr. Davila's "very little criminal history," "troubled background," and loss of the use of one arm warranted a "lesser sentence[.]" (Doc. 435 at 15.) Ms. Strickland had raised these facts in support of a variance in her November 2016 Sentencing Memorandum. (Doc. 292 at 1-3.)

the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Section 2255 relief is available only if "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quotation marks omitted) (superseded by statute on other grounds). Courts must presume "that the proceedings leading to the conviction were correct"; the burden is on the movant to demonstrate otherwise. *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)). Section 2255 requires district courts to hold an evidentiary hearing on a prisoner's motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

### III. Analysis

### A. The Law Governing an Ineffective Assistance of Counsel Claim

The Sixth Amendment to the Constitution guarantees the right to effective assistance of counsel in criminal cases. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). The right to effective assistance of counsel applies at all critical stages of the criminal proceedings, including plea negotiations, the entry of a guilty plea, and sentencing. *Lafler v. Cooper*, 566 U.S. 156, 162-63, 165 (2012). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland* 466 U.S. at 687. Thus, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This requires showing that: (1) counsel's performance was so deficient that it fell below the objective standard of reasonableness, such that counsel "was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and,

(2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 687, 694. In other words, a defendant alleging ineffective assistance of counsel must show both "incompetence and prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). "Courts are free to address these two prongs in any order, and failure under either is dispositive." *United States v. Barrett*, 797 F.3d 1207, 1214 (10th Cir. 2015).

The Court's inquiry into counsel's effectiveness must be based on its consideration of all the circumstances and from counsel's perspective at the time of the alleged error, and this standard is highly deferential. *Strickland*, 466 U.S. at 688. In the context of the plea bargain process, to demonstrate prejudice a defendant must show "a reasonable probability that but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### B. Ms. Strickland's Affidavit Regarding Her Representation of Mr. Davila

According to Ms. Strickland, whose affidavit is attached to the Government's Response to Mr. Davila's Motion, she spoke with Mr. Davila in person or by phone more than ten times before his plea hearing. (Doc. 441-1 at 1.). Ms. Strickland attests that she advised Mr. Davila that "the government had a strong case against [him] for crimes that included statutory mandatory minimums, making this case one in which a plea was the best course of action." (*Id.* at 1.) She states, further, that she counseled Mr. Davila regarding the plea as follows:

   a. The priority was to get a plea offer that eliminated any mandatory minimums and did not include potential 924(c) enhancements. I advised Mr. Davila that, although 924(c) was a stretch for the indicted case, the prosecution had made a credible threat to attempt a superseding indictment and then 924(c) could apply to a new charge of distributing marijuana, evidence of which was found during the search of Mr. Davila's home.
   b. I worked on a plea with both a role reduction and no bar on downward departure or variances.

   c. I requested the government give a four-level role reduction, but the government declined.

   d. I repeatedly and strongly advised Mr. Davila to debrief with the government, which would have made him eligible for safety-valve. He declined to debrief.

   e. Mr. Davila declining to debrief made negotiations for a lower sentence difficult.

   f. During the pendency of this case, Mr. Davila was charged with a crime in state court, and I coordinated with Mr. Davila and his state attorney to continually delay any resolution in the state matter so that Mr. Davila would keep a low criminal history and so that he could change his mind and debrief with the government.

   g. I discussed the likelihood that probation would include a two-level enhancement for the firearms in the [PSR]. Mr. Davila felt strongly that an enhancement was not appropriate. I agreed to file an objection to the enhancement.

(*Id.*)

   According to Ms. Strickland, after these discussions, Mr. Davila decided to accept the plea offer. (*Id.*) After she received the PSR, Ms. Strickland states that she and Mr. Davila reviewed it in a phone call that lasted more than forty minutes, and Ms. Strickland filed objections to the PSR and a sentencing memorandum accordingly. (*Id.*; see Docs. 292, 310.) Ms. Strickland also attests, and the relevant documents reflect, that she requested a 24-month sentence, and that the Court not impose a firearm enhancement and grant a further role reduction, on the grounds that Mr. Davila's participation in the crimes was motivated by his relationship with his brother and that he had no control over the drug enterprise. (Doc. 292 at 3-4; Doc. 310; Doc. 441-1.) Finally, Ms. Strickland attests, and the record reflects, that she argued these issues in open court during sentencing; and, although the Court overruled her objections, it granted a variance and sentenced Mr. Davila below the guideline range. (Doc. 441-1 at 2.)

  **C. Mr. Davila's Arguments Regarding Ms. Strickland's Advice During Plea-Bargaining**

Mr. Davila's arguments regarding the effectiveness of Ms. Strickland's advice during the plea-bargaining phase of his case are varied. Relying on Ms. Strickland's reference, in her affidavit, to "mandatory minimums," he argues that Ms. Strickland did not properly investigate the facts or the applicable law because the conduct charged in the indictment did not subject him to a mandatory minimum sentence. (Doc. 460 at 1.) Relying on Ms. Strickland's reference to the possibility of enhancements under 18 U.S.C. § 924(c) (which in relevant part provides for an enhanced sentence when a person uses or carries a firearm during and in relation to a drug trafficking crime or possesses a firearm in furtherance of such a crime), Mr. Davila argues that Ms. Strickland merely speculated that the Government could have attempted a superseding indictment, and that this demonstrates her lack of advocacy on his behalf. (*Id.* at 1.) He argues, further, that Ms. Strickland did not advise him that he was not facing a mandatory minimum sentence, and that she "allowed the Government to include stipulated facts in the plea agreement that were not true." (*Id.* at 3-5.) As to the latter allegations, Mr. Davila posits that the Government's evidence against him was limited to a phone call in which he agreed to loan money to one of his co-defendants, and that had Ms. Strickland properly advised him of this and that he was not facing a mandatory minimum sentence, he would have elected to go to trial. (*Id.*)

Mr. Davila's arguments fail to demonstrate that Ms. Strickland's advice during the plea-bargaining process fell below an objective standard of reasonableness. *Strickland* 466 U.S. at 688. As an initial matter, Ms. Strickland's references to mandatory minimums and a 924(c) charge do not indicate that she misconstrued the indictment or the underlying facts of his case. Although Mr. Davila was not indicted for crimes that carry mandatory minimum sentences, the Government had evidence of additional crimes for which he could have been indicted and which would have exposed him to a mandatory minimum consecutive sentence under 924(c). As indicated in the

PSR, the DEA's investigation and the Government's case file revealed that Mr. Davila was engaged in the sale of marijuana and was caught on the wiretap negotiating for the sale of firearms, and that officers found marijuana and several firearms in his residence.  (Doc. 295 at 6.)  Under 18 U.S.C. § 924(c)(1)(A)(i), possession of a firearm in furtherance of a drug trafficking crime enhances a sentence by a minimum of five years.[5]   Rather than indicating that she misunderstood the charges against him, Ms. Strickland's advice to Mr. Davila regarding the Government's credible threat to file a new charge of distributing marijuana and a related 924(c) charge carrying a mandatory minimum consecutive term of imprisonment demonstrates sound professional judgment exercised in her client's interest.[6]  (Doc. 441-1 at 1);  *see Premo v. Moore*, 562 U.S. 115, 124-25 (2011) (recognizing that deference to counsel's professional judgment is "essential when reviewing the choices an attorney made at the plea bargaining stage" because "[p]lea bargains are the result of complex negotiations suffused with uncertainty" including the unknown outcome of "a later plea offer if the case grows stronger and prosecutors find stiffened resolve").

Mr. Davila's remaining arguments in regard to Ms. Strickland's advice are equally unavailing.  Even assuming that Ms. Strickland did not specifically advise Mr. Davila that, as indicted, he was not facing a mandatory minimum sentence, he was specifically advised and confirmed his understanding of the sentences the Court could impose at his initial appearance and again at his plea hearing.  (Doc. 436 at 4; Doc. 476 at 17-18.)  Thus, even if Ms. Strickland was deficient for failing to advise Mr. Davila that he was not facing a mandatory minimum sentence

---

[5] A conviction for possession with intent to distribute more than a certain quantity of marijuana also carries a statutory mandatory minimum sentence, although it is unclear whether the Government communicated a plan to seek a superceding indictment adding such a charge.  *See* 21 U.S.C. § 841(b)(1)(A)(vii), (B)(vii).

[6] This is further supported by the record of Mr. Davila's plea hearing at which, in Mr. Davila's presence, Ms. Strickland represented to the Court that in exchange for the plea agreement, the Government agreed "that no more charges will be brought based on the information that forms the basis of the indictment, which is important in this case because there may be evidence that there were other drug transactions and possibly a 924(c) firearms charge."  (Doc. 436 at 6.)

under the indictment, the record belies the notion that but for this alleged deficiency he would have elected to go to trial instead of pleading guilty. Mr. Davila cannot satisfy the prejudice prong of the *Strickland* analysis in this regard. *See Hill*, 474 U.S. at 59 (requiring a showing that the petitioner "would not have pleaded guilty and would have insisted on going to trial" to satisfy *Strickland*'s prejudice prong).

As to the factual basis for his guilty plea, at his plea hearing Mr. Davila stated under oath that he had spoken with Ms. Strickland about all the facts and circumstances of his case and that he was satisfied with her advice and her representation of him. (Doc. 436 at 5.) He also stated that Ms. Strickland had read the plea agreement to him, discussed it him, and answered all of his questions. (*Id.*) The prosecutor represented that if the matter went to trial,

> the United States would prove that from on or about March 27th, 2014, and continuing to on or about April 28th, 2015, [Mr. Davila] worked with his co-defendants and others to distribute methamphetamine in Silver City, New Mexico. [Mr. Davila] is responsible for the distribution of approximately between 500 grams and 1.5 kilograms of methamphetamine. In furtherance of their drug trafficking activities, [Mr. Davila], on January 12th, 2015, delivered methamphetamine payments from two of his co-defendants to a third co-defendant at the direction of a fourth co-defendant.
>
> Additionally, on January 16th, 2015, at the direction of one of his co-defendants, [Mr. Davila] delivered $3,000 of meth -- to a methamphetamine source of supply and then delivered methamphetamine to another co-defendant.

(*Id.* at 8-9.) The foregoing tracks the language of the plea agreement. (Doc. 269 at 4.) And in response to the Court's query, Mr. Davila confirmed under oath, that he "did everything . . . the plea agreement says[.]" (Doc. 436 at 9.)

Having expressly admitted, under oath, to the foregoing conduct, Mr. Davila's arguments that some of the stipulated facts were not true and that the Government had insufficient evidence to convict him of Count 1 lack merit. *See United States v. Tucker*, 298 F. App'x 794, 798 (10th Cir. 2008) (unpublished) (rejecting a habeas petitioner's claim that the government lacked a

sufficient factual basis to support an element of a crime to which he had pleaded guilty because the petitioner had "explicitly admitted" the relevant fact in his plea agreement); *Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975) ("[T]he truth and accuracy of [a habeas petitioner's] statements made at [a plea hearing] should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from [their] apparent truth[.]").  By extension, the record— including Mr. Davila's sworn statements attesting to his satisfaction with Ms. Strickland's advice and representation and admitting the facts underlying his guilty plea—conclusively refutes Mr. Davila's arguments regarding the adequacy of Ms. Strickland's representation of him with respect to the Government's evidence against him.  In sum, Mr. Davila has not demonstrated deficient performance or prejudice in this regard.  *Hedman*, 527 F.2d at  21-22 (rejecting a habeas petitioner's allegations of ineffective assistance of counsel during plea negotiations as "completely and conclusively refuted by his earlier statements" where the petitioner stated, under oath, at his plea hearing that he "had fully discussed the matter with his attorney" and was "satisfied with the advice and services of his counsel").

### D.  Mr. Davila's Sentencing-Related Arguments

Mr. Davila's remaining arguments pertaining to sentencing issues are unavailing and the record reflects that he is not entitled to the relief he seeks.

#### 1.  The Amended PSR

Mr. Davila argues that Ms. Strickland spoke with him about the PSR as it was initially filed but did not speak with him regarding the revised PSR or how it would be used at his sentencing. (Doc. 460 at 5-6.)  He also argues that Ms. Strickland was ineffective for failing to object to the firearm enhancement reflected in the amended PSR or to argue that he was eligible for a two-level safety-valve reduction.  (Doc. 421 at 4-6.)

Initially, the record belies Mr. Davila's assertion that Ms. Strickland failed to discuss the amended PSR with him. At the sentencing hearing, the Court asked Ms. Strickland whether she had reviewed the amended report with Mr. Davila, and she responded that she had. (Doc. 435 at 2.) Mr. Davila was present during this exchange and did not object. (*Id.*) Mr. Davila's sentencing hearing lasted thirty minutes, during which time the Court and the parties discussed the amended PSR and Mr. Davila's objections to it at length. (*See generally id.*) For instance, Ms. Strickland argued that Mr. Davila objected to the additional language in the *amended* PSR concerning marijuana distribution, firearms, and evidence of illicit drug activity found in Mr. Davila's residence. (*Id.* at 2-3.) Responding to Ms. Strickland's arguments, the prosecutor stated, "I agree with the *amended* PSR. It has [Mr. Davila] calculated at 27 and a I, with a range of 70 to 87." (*Id.* at 10 (emphasis added).) Shortly afterward, the Court asked Mr. Davila, "is there anything you'd like to say?" (*Id.* at 11.) In responding to the Court's inquiry, Mr. Davila did not raise any concerns regarding the amended PSR. (*Id.* at 11-12.) Before the Court announced its sentence, it stated among other things "that the firearm enhancement," which the original PSR had not assigned, "is proven," leading to the amended PSR's calculated "Total Offense Level 27" and a corresponding guideline imprisonment range of "70 to 87 months." (*Id.* at 13.) The original PSR gave Mr. Davila no such firearm enhancement, and calculated Mr. Davila's total guideline offense level at 23 with an imprisonment range of 46-57 months. (Doc. 286 at 7.) Yet, though the Court's findings differed significantly from the findings in the original PSR, Mr. Davila did not object or otherwise indicate confusion as to their source.

The Court proceeded to announce sentence in pertinent part as follows:

> Mr. Davila has certainly earned a 70-month sentence, which is the low end of the applicable Guideline range. I'm supposed to impose a sentence that's sufficient, but not greater than necessary. The Guidelines inform my decision . . . Mr. Davila has very little criminal history and, with that in mind and with the troubled

background, the accident that resulted in . . . the loss of the use of his arm, I think that I can vary to a lesser sentence . . . . The Offense Level is 27, the Criminal History Category I, the Guideline imprisonment range is 70 to 87 months. . . . [A]s to Count 1 of the Indictment, the defendant, Anthony Davila, is committed to the custody of the Bureau of Prisons for a term of 60 months.

(Doc. 435 at 15-16.)  The Court concluded Mr. Davila's sentencing hearing by asking whether there was "[a]nything else" that needed to be addressed, to which Mr. Davila responded "No, thank you, Your Honor."  (*Id.* at 18.)  Mr. Davila's assertion that Mr. Strickland did not discuss the amended PSR with him is simply not credible in light of his failures, despite multiple opportunities during his sentencing hearing, to object to counsel's representation that she had reviewed the operative PSR with him, to state that he had not seen or discussed the amended PSR with counsel, or to otherwise indicate confusion regarding the Court and counsel's lengthy discussion of and frequent references to the amended PSR.

Nevertheless, even assuming that Ms. Strickland had failed to discuss the amended PSR with Mr. Davila, and assuming, further, that this constituted deficient performance, Mr. Davila cannot demonstrate prejudice in this regard.  Mr. Davila entered his plea on August 17, 2016. (Doc. 269; Doc. 436.)  The initial PSR was filed more than two months later, on October 25, 2016, and was amended more than a month after that, on December 2, 2016.  (Docs. 286, 295.)  Having pleaded guilty well in advance of completion of either version of the PSR, Mr. Davila cannot plausibly argue that but for Ms. Strickland's failure to review the amended PSR with him, there is a reasonable probability that he would have gone to trial instead of pleading guilty.  *Hill*, 474 U.S. at 59.

Mr. Davila's other arguments regarding Ms. Strickland's alleged deficiencies with respect to the amended PSR similarly lack merit.  First, contrary to Mr. Davila's argument, the record plainly demonstrates that Ms. Strickland objected to the firearm enhancement in a written

Objection to Amended PSR, and in open court at Mr. Davila's sentencing hearing. (Doc. 310; Doc. 435 at 6-7.) That the Court overruled Ms. Strickland's objection does not demonstrate deficient performance. (Doc. 435 at 13.) *See United States v. Miller*, 464 F. App'x 750, 752 (10th Cir. 2012) (unpublished) ("[T]he failure to obtain a favorable outcome is hardly proof of deficient performance[.]"). Second, the record demonstrates that, even without consideration of the firearms discovered in his residence, Mr. Davila was ineligible for the safety-valve reduction as a matter of law because—as he admits in his reply—he did not provide the Government with information and evidence about his offense, his co-conspirators, and his relevant conduct. (Doc. 312 at 4; Doc. 460 at 2-3.) Ms. Strickland, who had raised the issue of a safety-valve reduction in her sentencing memorandum, properly withdrew that argument at Mr. Davila's sentencing hearing, acknowledging that Mr. Davila was "not safety valve eligible" because he did not submit to a safety-valve debrief. (Doc. 435 at 3.) Ms. Strickland's decision to not pursue a meritless safety-valve-reduction argument does not entitle Mr. Davila to the relief that he seeks. *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) ("If [an] omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance.").

### 2. The Sentencing Disparity

Mr. Davila argues that, as a result of the Court's or Ms. Strickland's error, his sentence is unjustifiably disparate from that of co-defendant Gilbert Moreno. (Doc. 421 at 4; see Doc. 384.) The record reflects that, while Mr. Moreno and Mr. Davila both pleaded guilty to Count 1 of the indictment, admitted to responsibility for distribution of 500 grams to 1.5 kilograms of methamphetamine, and received a stipulation to a 2-point minor role reduction, their similarities for sentencing purposes ended there. (Doc. 265 at 2, 4, 5; Doc. 269 at 2, 4, 5.) At the time of their arrests on the indictment, both Defendants were found in possession of firearms, with seven

firearms seized from Mr. Davila's home and three firearms seized from Mr. Moreno.  (Doc. 265 at 2; Doc. 269 at 4; Doc. 295 at 7; Doc. 388.)  However, whereas Mr. Davila's total offense level was increased by two based on the seven firearms found in his home with drugs, drug paraphernalia, a large quantity of cash, a money counter, and a scale, Mr. Moreno's offense level was not affected by the three firearms that he lawfully possessed and which were returned to him following entry of judgment against him.  (Doc. 295 at 7; Doc. 388; Doc. 403; Doc. 405; Doc. 482 at 19.)  Mr. Moreno had served in the military and, unlike Mr. Davila, the Court and the Government did not find Mr. Moreno's possession of firearms to be in connection with his offense, as further evidenced by the fact that the Government ultimately returned these firearms to Mr. Moreno.  (Doc. 388; Doc. 403; Doc. 405; Doc. 482 at 5, 15-16, 18.)  As a result of this distinction, Mr. Moreno's total offense level was 25, whereas Mr. Davila's total offense level, having been increased by two points based on his possession of a firearm in connection with the offense, was 27.  (Doc. 295 at 7; Doc. 435 at 7-9, 10, 13; Doc. 482 at 18.)  Mr. Moreno's guideline imprisonment range, with a total offense level of 25 and a criminal history category of II, was 63-78 months, (Doc. 482 at 18), whereas Mr. Davila's guideline imprisonment range, with a total offense level of 27 and a criminal history category of I, was 70-87 months.  (Doc. 295 at 12; Doc. 435 at 13.)  Further, in Mr. Moreno's case, unlike Mr. Davila's, the Government recommended that the Court depart from the guideline range to a sentence of 51 months.  (Doc. 435 at 11; Doc. 482 at 11-12.)  Nevertheless, in both cases, the Court imposed a sentence lower than the respective guidelines ranges, sentencing Mr. Davila to a 60-month term of imprisonment (Doc. 326 at 2; Doc. 435 at 15-16), and Mr. Moreno to a 24-month term of imprisonment.[7]  (Doc. 386 at 2, Doc. 482 at 19.)

---

[7] In departing from the guidelines and sentencing Mr. Moreno to 24 months' imprisonment, the Court relied on Mr. Moreno's "background and his family support and his sobriety post-arrest and his rehabilitation post-arrest and the education and the bright student that he was and the bright young man he remains," "the fact that this is a first felony conviction," and "his service to our country, his decorated service to our country."  (Doc. 482 at 18-19.)

Mr. Davila is not entitled to relief based on his challenge to the reasonableness of his sentence. As an initial matter, Mr. Davila cannot prevail in his attempt to challenge the substantive reasonableness of the district court's discretionary sentencing decision because, in his plea agreement, Mr. Davila expressly waived his right to raise such a challenge. (Doc. 269 at 7.) Specifically, Mr. Davila agreed "to waive any collateral attack to . . . any sentence . . . pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance." (*Id.*) Having voluntarily and knowingly entered into this plea agreement, Mr. Davila is bound by its waiver provision. *United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004) (stating that a court will hold a defendant to the terms of a lawful plea agreement, including a waiver of appellate rights).

Even if he had not waived this right, however, his argument would fail on other grounds. Assuming that Mr. Davila could overcome the Government's argument that he is procedurally barred from challenging the substantive reasonableness of his sentence because he did not raise the issue on direct appeal,[8] the disparity between Mr. Davila's sentence and that of Mr. Moreno does not constitute a basis for vacating his sentence. (Doc. 441 at 8.) In the Tenth Circuit, "a sentence imposed within [or below] the properly calculated advisory guideline range is entitled to

---

[8] The Government argues that, because he did not raise this issue on direct appeal, Mr. Davila is procedurally barred from raising it in the context of his Section 2255 motion. (Doc. 441); *see United States v. Frady*, 456 U.S. 152, 165 (1982) (stating that because "a final judgment commands respect[,]" "we have long and consistently affirmed that a collateral challenge may not do service for an appeal"); *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) ("Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal."). Mr. Davila responds that he could not have raised this issue on direct appeal because Mr. Moreno was sentenced after the time for filing his appeal expired, and his substantive unreasonableness argument is premised on the disparity between his and Mr. Moreno's sentences. (Doc. 460 at 6); *see Warner*, 23 F.3d at 291 (stating that if a defendant "can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains," he will not be barred from raising the defaulted issue in a Section 2255 motion). Here, accepting the notion that Mr. Davila's reason for failing to raise his substantive unreasonableness argument on appeal constituted "good cause," he has not demonstrated "actual prejudice" or a "fundamental miscarriage of justice" based on the at-issue sentencing disparity for the reasons explained herein.

a rebuttable presumption of reasonableness[.]" *United States v. Balbin-Mesa*, 643 F.3d 783, 788 (10th Cir. 2011) (alteration omitted). Mr. Davila's sentence, which is 10 months less than the low end of the guideline range, and 27 months less than the high end of the guideline range, is therefore presumptively reasonable.

Mr. Davila seeks to rebut the presumption of reasonableness by relying on the proposition, stated in *Kimbrough v. United States*, 552 U.S. 85, 107 (2007), that "uniformity [is] an important goal of sentencing" and "excessive sentencing disparities" should therefore be avoided. (Doc. 421 at 4.) Matters of sentencing are within the sound discretion of the sentencing court, which *may*, but is not *required to*, consider sentencing disparities among co-defendants. *United States v. Verdin-Garcia*, 516 F.3d 884, 899 (10th Cir. 2008).[9] In that regard, the Tenth Circuit has held that,

> even if sentencing disparities among co-defendants may be considered by district courts in the exercise of their sentencing discretion, 18 U.S.C. § 3553(a)(6) requires a judge to take into account only disparities *nationwide* among defendants with similar records and Guideline calculations.

*Id.* (emphasis in original) (citation omitted). Here, Mr. Davila has not demonstrated that his sentence was disparate from similarly situated defendants nationwide. Moreover, the sentencing judge's lack of explicit acknowledgement of Mr. Davila's and Mr. Moreno's similarity based on their accountability for the same drug quantity provides no basis for vacating his sentence. *Id.*

Nor can Mr. Davila prevail on his theory that the sentencing disparity was caused by, or demonstrates, Ms. Strickland's ineffective assistance. As discussed in greater detail above, Ms. Strickland filed a sentencing memorandum in which she urged the Court to impose a 24-month term of imprisonment. (Doc. 292 at 4.) *Inter alia*, Ms. Strickland argued that Mr. Davila was "the

---

[9] Mr. Davila cites *Verdin-Garcia* for this very proposition; however, it does not, unfortunately, support his position. (Doc. 421 at 4.)

least culpable amongst his codefendants" and should therefore be accorded a four-level reduction under U.S.S.G. § 3B1.2. (*Id.* at 3); *see* U.S.S.G. § 3B1.2(a) (providing that "[i]f the defendant was a minimal participant in any criminal activity" his offense level should be decreased by 4). Ms. Strickland further argued that Mr. Davila was entitled to an additional two-level reduction because his at-issue criminal acts were motivated by his close relationship with his brother, he was not compensated for these acts, and he had no knowledge of the scope and structure of the criminal enterprise. (Doc. 292 at 3-4); *see* U.S.S.G § 2D1.1(b)(17) (providing for an additional two-level decrease for a "minimal participant" who was "motivated by [a] . . . familial relationship," received no monetary compensation related to the drug-enterprise, and "had minimal knowledge of the scope and structure of the enterprise"). She also filed a written objection to the amended PSR in which she opposed the firearm enhancement. (Doc. 310.) And, she reiterated these arguments at Mr. Davila's sentencing hearing. (Doc. 435 at 6-7, 9.) That the Court imposed a longer sentence than Ms. Strickland advocated simply reflects an exercise of judicial discretion and does not support the notion that counsel's performance fell below an objective standard of reasonableness. *See Strickland* 466 U.S. at 687 ("When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."); *Miller*, 464 F. App'x at 752 ("[T]he failure to obtain a favorable outcome is hardly proof of deficient performance[.]").

## IV.    Conclusion

For all of the foregoing reasons, I propose to find that the motion, exhibits, and record conclusively establish that Mr. Davila is not entitled to the relief he seeks. Consequently, I recommend that the Court **DENY** Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody to Correct his Illegal Sentence pursuant

to 28 U.S.C. § 2255 (Doc. 420).

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.